256 N.J. Super. 538 (1992)
607 A.2d 703
FAIRFIELD LEASING CORPORATION, PLAINTIFF,
v.
TECHNI-GRAPHICS, INC., AND ROBIN UMSTEAD, DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
U-VEND, INC., THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided March 18, 1992.
*539 Philip I. Levitan, for Plaintiff and Third-Party Defendant (Levitan and Frieland, Attorneys).
Richard R. Keiling, for Defendants/Third-Party Plaintiffs.
DONALD S. COBURN, J.S.C.
In this civil action for breach of contract, the primary issue posed today is whether the court should enforce a waiver of the constitutional right of trial by jury contained in a standardized mass contract, commonly referred to as a contract of adhesion.
On January 30, 1991, defendant Techni-Graphics, Inc., a New Jersey corporation (TGI) signed a 39-month lease for a coffee machine at a rental of $209.50 per month with third-party defendant U-Vend, Inc., a New York corporation (U-Vend). Defendant Robin Umstead guaranteed performance of the lease for TGI. U-Vend assigned the lease to plaintiff, Fairfield Leasing Corporation, a New Jersey corporation (FLC). Under the contract only U-Vend is responsible to TGI for failures with respect to the leased equipment, and payment to the assignee of the monthly rent must continue despite any breach of contract by U-Vend.
TGI alleged that the machine was defective and infested with cockroach larvae. Because U-Vend refused to take corrective action, TGI stopped making the rental payments to FLC in March, 1991. FLC instituted suit and TGI brought in U-Vend by way of a third-party complaint based on breach of contract. TGI demanded a trial by jury on all issues.
This matter is now before the court on the joint motion of plaintiff FLC and third-party defendant U-Vend to strike the jury demand based on the following provision contained in the lease and in the guarantee:
The undersigned does further waive trials by jury in any action or proceeding brought by the leasing Company, or its assignee, against the undersigned on any matters whatsoever arising out of, under or by virtue of the terms of the Agreement or of this Guarantee.
*540 The agreement is a standardized form contract containing 23 paragraphs. U-Vend prepared it. The jury waiver provision is contained in the last part of the twenty-second paragraph, which also contains a merger clause and a no-modification clause. The guarantee, which is part of the agreement, contains the jury waiver clause on lines 21 to 23 of a 25-line paragraph. The letters of the single-spaced contract and guarantee are 1/10 of a centimeter in height, or approximately one-half the size of the letters produced by the typical typewriter. It is a classic example of a document which has been prepared with the intent that it neither be negotiated nor read.
Two New Jersey cases have directly considered the question of waiver of trial by jury in civil cases based upon a provision of the contract in litigation: Sexton v. Newark Dist. Telegraph Co., 84 N.J.L. 85, 101, 86 A. 451 (Sup.Ct. 1913) and Franklin Discount Co. v. Ford, 27 N.J. 473, 492-493, 143 A.2d 161 (1958). Although both cases accept that such a waiver can be made, neither case involved a contract of adhesion.
In Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69 (1960), the Supreme Court identified the problem with commercial adhesion contracts in these words:
The traditional contract is the result of free bargaining of parties who are brought together by the play of the market, and who meet each other on a footing of approximate economic equality. In such a society there is no danger that freedom of contract will be a threat to the social order as a whole. But in present-day commercial life the standardized mass contract has appeared. It is used primarily by enterprises with strong bargaining power and position. "The weaker party, in need of the goods or services, is frequently not in a position to shop around for better terms, either because the author of the standard contract has a monopoly (natural or artificial) or because all competitors use the same clauses. His contractual intention is but a subjection more or less voluntary to terms dictated by the stronger party, terms whose consequences are often understood in a vague way, if at all." Such standardized contracts have been described as those in which one predominant party will dictate its law to an undetermined multiple rather than to an individual. They are said to resemble a law rather than a meeting of the minds. (at 389-390, 161 A.2d 69) (Citations omitted).
Since Henningsen, our courts have invalidated unconscionable or unfair terms of such contracts in a variety of contexts. See, *541 e.g., Rudbart v. Dist. Water Supply Comm., 238 N.J. Super. 41, 48, 568 A.2d 1213 (App.Div. 1990), and the cases cited therein.
The federal courts have been appropriately sensitive to the dangers posed to the public by jury waiver provisions in contracts of adhesion. Annotation, Contractual Jury Trial Waivers in Federal Civil Cases, 92 A.L.R.Fed. 688 (1989). For example, in National Equipment Rental, Ltd. v. Hendrix, 565 F.2d 255 (2nd Cir.1977), the court was concerned with an equipment leasing arrangement similar to the one involved in this case. The waiver of jury trial was "literally buried in the eleventh paragraph of a fine-print sixteen clause agreement." Id. at 258. The court said:
It is elementary that the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Heyman v. Kline, 456 F.2d 123, 129 (2d Cir.1972), cert. denied, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972). Indeed, a presumption exists against its waiver. Aetna Insurance Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809 [811], 81 L.Ed. 1177 (1937). There is little doubt that the provision relied on by NER fails to overcome this presumption. The waiver clause was set deeply and inconspicuously in the contract, and Justice Black, dissenting in National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 332-3, 84 S.Ct. 411, 423, 11 L.Ed.2d 354 (1964) aptly characterized the nature of NER's form agreements:
this printed form provision buried in a multitude of words is too weak an imitation of a genuine agreement to be treated as a waiver of so important a constitutional safeguard ... it exhausts credulity to think that they or any other layman reading these legalistic words would have known or even suspected that they amounted to [such] an agreement ...[1] (Id.)
And in footnote 1, the court further observed:
In Szukhent, the Supreme Court, by a 5-4 vote, upheld a provision in a similar contract providing that service of process could be made on an agent designated in the document. The right to a jury trial, however, is far more fundamental than the right to personal service, and cannot be waived absent a showing that its relinquishment is knowing and intentional. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) provides a compelling analogy. There, the Court refused to uphold a contractual provision waiving due process rights, noting that there was "no showing whatever that the appellants were actually aware or made aware of the significance of the fine print now relied upon as a waiver of constitutional rights." Id. at 95, 92 S.Ct. at 2002. No such showing has been made here. (Id.)
*542 In Dreiling v. Peugeot Motors of America, Inc., 539 F. Supp. 402, 403 (D. Col. 1982), the court, in refusing to enforce a contractual jury waiver, observed:
Jury trial may be waived if done knowingly and intentionally, but courts will indulge every reasonable presumption against waiver. Aetna Insurance Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 811, 81 L.Ed. 1177 (1937); Rodenbur v. Kaufmann, 320 F.2d 679, 683 (D.C. Cir.1963). In view of this strong presumption the defendants have a very heavy burden of proving that the plaintiffs knowingly, voluntarily and intentionally agreed upon the jury waiver provision in the 1978 Agreement. A constitutional guarantee so fundamental as the right to jury trial cannot be waived unknowingly by mere insertion of a waiver provision on the twentieth page of a twenty-two page standardized form contract.
Defendants have presented no evidence that the waiver provision was a bargained for term of the contract, was mentioned during negotiations, or was even brought to the plaintiffs' attention. In fact, the defendants have failed to show that the plaintiffs had any choice other than to accept the contract as written. The 1978 Agreement appears to be Peugeot's standardized printed dealer contract, drafted by Peugeot. Obviously, the plaintiffs had little, if any, opportunity to negotiate the provisions. Absent proof to the contrary, such an inequality in relative bargaining positions suggests that the asserted waiver was neither knowing nor intentional.
By contrast, where the parties have been represented by counsel or there was evidence of negotiation without substantial inequality in bargaining positions, or the waiver provision was conspicuous, the tendency has been to enforce the waiver. See, e.g., Leasing Service Corp. v. Crane, 804 F.2d 828 (4th Cir.1986); In re Reggie Packing Co., 671 F. Supp. 571 (N.D.Ill. 1987); N. Feldman & Son, Ltd. v. Checker Motors Corp., 572 F. Supp. 310 (S.D.N.Y. 1983).
With one exception, K.M.C. Co., Inc. v. Irving Trust Co., 757 F.2d 752 (6th Cir.1985), the federal cases hold that the party seeking to enforce the waiver has the burden of proving that the objecting party's consent was knowing and voluntary. Annotation, Contractual Jury Trial Waivers in Federal Civil Cases, supra, at 695. Also, the federal courts have uniformly held that in diversity cases the issue of waiver is governed by federal law. Id. at 696.
*543 Since this case comes within the province of the Uniform Commercial Code, N.J.S.A. 12A:1 et seq., analysis is further aided by reference to Herbstman v. Eastman Kodak Co., 131 N.J. Super. 439, 330 A.2d 384 (App.Div. 1974), where the court applied the Code's requirement of conspicuousness for warranty disclaimers under N.J.S.A. 12A:2-316 to the limitations of remedy provision found in N.J.S.A. 12A:2-719, even though the latter section did not expressly require conspicuousness for such disclaimers. Significantly, the Code defines conspicuousness in these terms:
"Conspicuous": A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous." Whether a term or clause is "conspicuous" or not is for decision by the court. N.J.S.A. 12A:1-201(10).
By that definition, and any other, the jury waiver in the instant case is utterly inconspicuous.
Since the inestimable right to civil jury trial is preserved in Article 1, paragraph 9, of the New Jersey Constitution, it is fit that the courts protect that right as a matter of public policy at least to the extent that the Uniform Commercial Code protects against waivers of warranties and limitations of remedy. Therefore, where, as here, a non-negotiated jury waiver clause appears inconspicuously in a standardized form contract entered into without assistance of counsel, the waiver should not be enforced.
FLC and U-Vend contend that the choice of law provision of the contract, paragraph 21, entitles them to the application of New York law on the issue of the validity of the waiver. Paragraph 21, in the same fine print as the jury waiver, provides:
This agreement shall be deemed to have been made in the State of New York, regardless of the order in which the signatures of the parties shall be affixed hereto, and shall be interpreted, and the rights and liabilities of the parties here determined, in accordance with the laws of the State of New York, and as part of the consideration for the Lessor's executing this lease, Lessee hereby agrees *544 that all actions or proceedings arising directly or indirectly from this lease shall be litigated only in Courts having situs within the State of New York, and Lessee hereby consents to the jurisdiction of any local, State of Federal court located within the State of New York and waives the personal service of any and all process upon Lessee herein, and consents that all such service of process may be made by certified or registered mail, return receipt requested, directed to the Lessee at the address hereinabove stated; and service so made shall be complete two (2) days after the same shall have been posted as aforesaid.
FLC and U-Vend rely in this regard upon Air Economy Corp. v. Aero-Flow Dynamics, 122 N.J. Super. 456, 457, 300 A.2d 856 (App.Div. 1973) where the court said:
While an agreement to be bound by the laws of a designated state cannot oust a state of judicial jurisdiction, it will be enforced unless it is unfair, unreasonable or against the public policy of the forum state. Restatement, Conflict of Laws, § 80 at 244 (1971); Central Contracting Co. v. Maryland Casualty Co., 367 F.2d 341 (3rd Cir.1966); Mayer v. Roche, 77 N.J.L. 681 [75 A. 235] (E. & A. 1909).
Under the circumstances existing here, there is nothing unreasonable or unfair in the agreement to be bound by New York law.
But that case is distinguishable because it involved a fully negotiated contract for the sale of an entire business. Where the contract is one of adhesion, as here, the opposite result is required. Professor Robert A. Leflar succinctly summarized the applicable law:
Even an express provision in a contract stating an intent that it be governed by the laws of a named state may be held not to express the real intent of the parties. Such a stated intent should be disregarded when it is contained in an adhesion contract such as the fine print in an insurance policy prepared by one of the parties primarily for his own advantage and inserted without the actual knowledge of the other party. At least this is true if the court is looking for the actual intent, if any, of both the parties. If the stated intent is a purposeful statement joined in by both parties, so that they can know in advance what law will govern their transaction and effectuate it, there is much good sense in a rule which makes such a genuine mutual intent controlling. This good sense is, however, limited to the cases where the stated intent is a real one. Leflar, American Conflicts Law, p. 302 (3rd ed. 1977).
To deviate from the law as described by Professor Leflar would be in violation of the public policy of this State as that concept has been articulated in Henningsen, supra, 32 N.J. at 403-404, 161 A.2d 69, and its progeny.
Although the plaintiff may be correct in its assertion that under New York law the jury waiver clause as used here would *545 be accepted as binding, see Annotation, Validity and Effect of Contractual Waiver of Jury Trial, 73 A.L.R.2d 1332 (1960), none of the New York cases cited involved the kind of fine print, mass produced contract which is before me. Nor do they appear to have construed and applied the provision of the Uniform Commercial Code on choice of law in a case such as this, which in both states is governed by the Code. In pertinent part, the Code says this:
Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this Act applies to transactions bearing an appropriate relation to this state. N.J.S.A. 12A:1-105(1).
Although the Code does not expressly require that choice of law provisions be conspicuous, it seems to me that a contractual choice of law provision raises a unique problem in contract law. The meaning of the rest of the contract may be gleaned simply by careful reading. However, the incorporation in a contract of another state's entire body of law affecting the rights and liabilities of the parties may have serious consequences which are essentially unknowable to the layman. It is surely a minimal imposition, if any, on the freedom of contract to construe the Code so as to require that choice of law provisions be "conspicuous" as that concept is defined in N.J.S.A. 12A:1-201(10). The Code specifically requires conspicuousness for warranty disclaimers, and, as noted, the Appellate Division in Herbstman v. Eastman Kodak Co., 131 N.J. Super. 439, 330 A.2d 384 (App.Div. 1974), extended that requirement to limitations of remedy under N.J.S.A. 12A:2-719. In my view, choice of law provisions are at least as important as provisions limiting remedies, and should be similarly treated in contracts of adhesion. Consequently, I find the choice of law provision in this contract to be void.
In accordance with the law of New Jersey, the motion to strike the jury demand is denied.