827 A.2d 358 (2001)
362 N.J. Super. 200
DISCOVER BANK, Plaintiff,
v.
James B. SHEA, Defendant.
Superior Court of New Jersey, Law Division, Monmouth County.
Decided October 17, 2001.
*359 Glenn A. Harris, Voorhees, for plaintiff (Ballard Spahr Andrews & Ingersoll, LLP); Alan S. Kaplinsky and Mark J. Levin (Ballard Spahr Andrews & Ingersoll, LLP), Philadelphia, PA, of counsel.
Samuel C. Inglese, Metuchen, for defendant (Moss & Inglese).
ALEXANDER D. LEHRER, J.S.C.

INTRODUCTION
Defendant, James B. Shea, is a plaintiff in a class action filed in California on behalf of Discover's credit card customers who were allegedly charged improper overlimit fees by Discover. Mr. Shea's individual claim is less than $100, but the class claims are alleged to be in the tens of millions. Mr. Shea alleges two types of wrongful conduct by Discover in the California Action:
1. Incorrect identification of "available credit" on the credit cardholders' monthly *360 statements which results in cardholders often incurring improper overlimit fees.
2. Incorrect "minimum payment due" figures on card holders' monthly statements which is often not sufficient, even if timely paid, to avoid the imposition of an overlimit fee.
Based on these allegations, Mr. Shea asserts claims in the California Class Action for breach of contract, tortious breach of the implied covenant of good faith and fair dealing, fraudulent or negligent misrepresentation, and deceptive business practices.
The New Jersey action was instituted by Discover by way of an Order to Show Cause seeking relief that would effectively block the California Class Action. Discover seeks to force James B. Shea to individually arbitrate his $100 claim. The original agreement between Discover and Mr. Shea did not provide for arbitration.
Discover seeks to compel arbitration based on an "amendment" to its credit card agreements which it purported to make retroactively by way of a "bill stuffer" notice which abrogates Mr. Shea's right to trial and right to bring a class action. Mr. Shea claims, by way of certification that he never noticed the "bill stuffer" amendment; had he been aware of the arbitration provision, he would not have agreed to it.

UNDER NEW JERSEY LAW THE RIGHT TO A TRIAL CANNOT BE WAIVED BY UNILATERAL "BILL STUFFER" AMENDMENT TO A CREDIT CARD
The courts in New Jersey rely on basic contract principles in interpreting arbitration clauses; only those disputes for which there is a mutual agreement to arbitrate can be compelled to arbitration. See Alamo Rent A Car, Inc. v. Galarza, 306 N.J.Super. 384, 703 A.2d 961, (App. Div.1997). See also Brick Township Municipal Utilities Authority v. Diversified R.B. & T. Construction Co., 171 N.J.Super. 397, 409 A.2d 806, (App.Div.1979); Mills v. J. Daunoras Construction, Inc., 278 N.J.Super. 373, 377, 651 A.2d 114 (App.Div.1995); In the Matter of Grover and Universal Underwriters Insurance Company, 80 N.J. 221, 403 A.2d 448, (1979); and Wasserstein v. Kovatch, 261 N.J.Super. 277, 284, 618 A.2d 886, (App. Div.1993).
New Jersey courts also do not permit unilateral amendments to existing agreements to change material terms. In County of Morris v. Fauver, 153 N.J. 80, 707 A.2d 958, (1998) the court held that unilateral statements or actions made after an agreement has been reached or added to a completed agreement clearly do not serve to modify the original terms of a contract, especially where the other party does not have knowledge of the changes; knowledge and assent are essential to an effective modification. See also New Jersey Manufacturers v. O'Connell, 300 N.J.Super. 1, 692 A.2d 51 (App.Div.1997).
In Marchak v. Claridge Commons, Inc., 134 N.J. 275, 633 A.2d 531, (1993) the court held a contractual provision in which a consumer elects arbitration as the exclusive remedy, must be read in light of its effect on the consumer's right to sue. A clause depriving a citizen of access to the courts should clearly state its purpose. The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue.
No New Jersey case has directly decided the issues of validity of a unilateral "bill stuffer" change to a credit card agreement; however, California courts have in the well reasoned decision of Badie v. Bank of America, 67 Cal.App.4th 779, 79 *361 Cal.Rptr.2d 273 (1998). Bank of America sought to add an arbitration clause to its existing account agreements by sending its customers a "bill stuffer" with their monthly account statements, notifying them of a new arbitration clause, just as Discover sought to do here. Bank of America purported to do so under the "change of terms" provision in its original agreement, which provided that Bank of America could change any "term, condition, service or feature" of a customer's account.
The court held that Bank of America could not unilaterally add the arbitration clause to existing account agreements, and therefore, the clause was not enforceable. The court acknowledged the liberal policy of enforcing arbitration agreements (which is equally applicable under California law as it is under New Jersey law), but noted that in order to be enforceable, both must have consented to arbitrate. The court stated at page 790, 79 Cal.Rptr.2d 273:
"That policy [favoring alternative dispute resolution], whose existence we readily acknowledge, does not even come into play unless it is first determined that the Bank's customers agreed to use some form of ADR to resolve disputes regarding their deposit and credit card accounts, and that determination, in turn, requires analysis of the account agreements in light of ordinary state law principles that govern the formation and interpretation of contracts."
The court went on to hold that the change of terms provision of the original customer agreements, which did not address how disputes were to be resolved, did not contemplate that an arbitration clause could be added. The Badie court, at page 800, 79 Cal.Rptr.2d 273, noted that, "[i]mportantly, no `term, condition, service, or feature' in the original credit account agreement addressed the method or forum for resolving legal claims related to customer accounts." In interpreting this contract language which the court found to be ambiguous, the court held at page 801, 79 Cal.Rptr.2d 273:
"Our focus is on whether the words of the original account agreements mean that the Bank's customers, by agreeing to a unilateral change of terms provision, intended to give the Bank the power in the future to terminate its customers' existing right to have disputes resolved in the civil justice system, including their constitutionally based right to a jury trial. In our view, the object, nature and subject matter of these agreements strongly support the conclusion that the customers did not so intend, and that they, as promisors with respect to the change of this provision, had no inkling that the Bank understood the provision differently."
The court in Badie also found it significant that in order to find that the original account agreements authorized the addition of the arbitration clause, the court would have to assume that the customers "intended to permit a modification that would amount to waiver of their constitutionally based right to a jury trial." Id. at 803-04, 79 Cal.Rptr.2d 273. The court rejected this contention, finding "no unambiguous and unequivocal waiver of the right to a jury trial either in the language of the change of terms provision or in any other part of the original account agreements." Id. at 805, 79 Cal.Rptr.2d 273. The court also found no waiver of the right to a jury trial in customers' failure to close their accounts or in continuing to use their accounts after receipt of the bill stuffer announcing the amendment. The court held at page 806, 79 Cal.Rptr.2d 273:
"Because we find no unambiguous and unequivocal waiver of that right here, and because the right to select a judicial *362 forum, whether a bench trial or a jury trial, as distinguished from arbitration or some other method of dispute resolution, is a substantial right not lightly to be deemed waived (citations omitted), the Bank's interpretation of the change of terms provision must be rejected."
The Badie court was also concerned with the Bank's claim that it had the unilateral and nonnegotiable right to vary every aspect of the performance required by the parties to the account agreements. The Court suggested that the Bank's interpretation of how broadly it could exercise its rights, with no limitation on the substantive nature of the changes it could make, would virtually eliminate the good faith and fair dealing requirement from the Bank's relationship with its credit account customers, and would open the door to a claim that the agreements are illusory.
Applying the persuasive reasoning of the Badie case, Discover's unilateral attempt to amend its original cardholder agreement to include an arbitration clause is ineffective. The original agreement here, like the agreement in Badie, contains no relevant provisions about how disputes are to be resolved. There is no arguable language that in any way suggests the agreement would allow a fundamental change, as the waiver of trial by jury, without the express consent of both parties. The change of terms provision in the original agreement states Discover may "change any term or part of this Agreement," but goes on to clarify exactly what types of changes it can make by specific language.
New Jersey law is similar to California law with respect to all of the factors relied upon by the court in Badie. Both New Jersey and California rely on basic contract principles in interpreting arbitration clauses; both hold only a mutual agreement to arbitrate can be enforced. See Alamo Rent A Car, Inc. v. Galarza, Super. As the court in Brick Township Municipal Utilities Authority v. Diversified R.B. & T. Construction Co., 171 N.J.Super. 397, 402, 409 A.2d 806 (App.Div.1979) stated:
"While public policy favors the arbitration process, and contracts should be read liberally to find arbitrability if reasonably possible, there survives the principle that the authority of the arbitrator is derived from the mutual assent of the parties to the terms of submission; the parties are bound only to the extent, and in the manner, and under the circumstances pointed out in their agreement, and no further."
See also Mills v. J. Daunoras Construction, Inc., 278 N.J.Super. 373, 377, 651 A.2d 114 (App.Div.1995); In the Matter of Grover and Universal Underwriters Insurance Company, 80 N.J. 221, 403 A.2d 448 (1979) ("In the absence of a consensual understanding, neither party is entitled to force the other to arbitrate their dispute."); Wasserstein v. Kovatch, 261 N.J.Super. 277, 284, 618 A.2d 886, (App. Div.1993) ("It is axiomatic that a person cannot be compelled to arbitrate a dispute with another person unless there is a mutual agreement to do so.") and Fairfield Leasing Corporation v. Techni-Graphics, Inc., 256 N.J.Super. 538, 607 A.2d 703 (Law Div.1992) the court held a non-negotiated jury waiver clause that appears inconspicuously in a standardized form contract entered into without assistance of counsel, should not be enforced.
These principles of law as set forth by the New Jersey courts are the same principles relied upon by the California court in the Badie decision. Therefore, this Court finds the Badie reasoning pervasive and applicable.
Discover attempts to avoid Badie and the similar principles of New Jersey law by arguing that, under Delaware law *363 (namely, 5 Del. C. § 952), it was permitted to make such a unilateral addition to its credit card agreement.
While Discover's credit card agreement provides that Delaware law applies, the Delaware law clearly violates New Jersey Public policy and under New Jersey law that choice of law provision cannot be given effect. In New Jersey, the unilateral addition of an arbitration agreement into a contract of adhesion cannot be given legal effect.
In Fairfield Leasing Corporation v. Techni-Graphics, Inc., Supra, the court refused to apply a New York law provision on the issue of jury waiver. The court at page 544, 607 A.2d 703 quoted Professor Robert A. Leflar:
"Even an express provision in a contract stating an intent that it be governed by the laws of a named state may be held not to express the real intent of the parties. Such a stated intent should be disregarded when it is contained in an adhesion contract such as the fine print in an insurance policy prepared by one of the parties primarily for his own advantage and inserted without the actual knowledge of the other party. At least this is true if the court is looking for the actual intent, if any, of both the parties. If the stated intent is a purposeful statement joined in by both parties, so that they can know in advance what law will govern their transaction and effectuate it, there is much good sense in a rule which makes such a genuine mutual intent controlling. This good sense is, however, limited to the cases where the stated intent is a real one. Leflar, American Conflicts Law, p. 302 (3rd ed.1977).
To deviate from the law as described by Professor Leflar would be in violation of the public policy of this State as that concept has been articulated in Henningsen [v. Bloomfield Motors, Inc.], supra, 32 N.J. [358] at 403-404, 161 A.2d 69, and its progeny."
The court went on to void the choice of law provision in part because it was not conspicuous and stated at 256 N.J.Super. 538, 545, 607 A.2d 703:
"Although the Code does not expressly require that choice of law provisions be conspicuous, it seems to me that a contractual choice of law provision raises a unique problem in contract law. The meaning of the rest of the contract may be gleaned simply be careful reading. However, the incorporation in a contract of another state's entire body of law affecting the rights and liabilities of the parties may have serious consequences which are essentially unknowable to the layman. It is surely a minimal imposition, if any, on the freedom of contract to construe the Code so as to require that choice of law provisions be `conspicuous' as that concept is defined in N.J.S.A. 12A:1-201(10). The Code specifically requires conspicuousness for warranty disclaimers, and, as noted, the Appellate Division in Herdsman [Herbstman] v. Eastman Kodak Co., 131 N.J.Super. 439, 330 A.2d 384 (App.Div. 1974), extended that requirement to limitations of remedy under N.J.S.A. 12A:2-719. In my view, choice of law provisions are at least as important as provision limiting remedies, and should be similarly treated in contracts of adhesion. Consequently, I find the choice of law provision in this contract to be void."
The choice of law provision in Discover's agreement is far from conspicuous. It is contained in the final paragraph of the original credit card agreement (paragraph 24), and it is in the same font and print as the body of the agreement (some other provisions are more conspicuously in bold). *364 Clearly, Delaware Law, under the holding of Fairfield, should not be enforced.
An ordinary choice of law analysis mandates the same result. New Jersey courts apply the "most significant relationship test" of the Restatement (Second) Conflict of Laws §§ 6 and 188 to determine which state's laws apply. See Gilbert Spruance Company v. Pennsylvania Manufacturers' Association Insurance Company, 134 N.J. 96, 102-03, 629 A.2d 885 (1993). The relevant considerations include: the parties domiciles or residences; the places of incorporation and places of business of the parties; the place of contracting; the place of performance; the relevant policies of the forum; the relevant policies of other interested states and the relative interests of those states with respect to the particular issue; the protection of justified expectations; and the ease in the determination and application of the law to be applied. An analysis of these factors mandates an application of New Jersey law.
1. Mr. Shea is a New Jersey resident who entered into his contract with Discover in New Jersey; the contract was accepted in New Jersey; Mr. Shea receives his bills and makes his payments in New Jersey and therefore performs his part of the contract in New Jersey;
2. The subject matter of the contract (the credit card) is located in New Jersey;
3. New Jersey has strong policy interests in protecting its citizens' rights to sue in court as well as their rights to jury trials. The waiver of rights must be clear, knowing, informed, without coercion and unequivocal. Delaware has no legitimate interests in having its law in this regard applied;
4. While Discover is located in Delaware, Delaware has a much less significant relationship to Mr. Shea's claims than does New Jersey.
Clearly, New Jersey law applies with respect to the issue of whether Discover could unilaterally add an arbitration clause to Mr. Shea's agreement. Under New Jersey law, which is in all relevant respects identical to California law, Mr. Shea should not be forced to arbitrate his claims.

DISCOVER HAD THE MEANS TO PROVIDE PROPER NOTICE, AND ITS CONSENT BY SILENCE ARGUMENT LACKS MERIT
Discover has argued that, while Mr. Shea did not affirmatively waive his right to a jury trial, he "consented" to the amendment by failing to close his account and failing to inform Discover that he did not want to be bound by the arbitration provision and by closing his account. This argument, which was rejected by the court in Badie, is also rejected by this court as without merit.
The amendment to the agreement was included with a monthly statement, as a "bill stuffer" and not seen by Mr. Shea. Mr. Shea did not have an unconditional "right" to opt out of the arbitration clause since Discover admits that it would have closed Mr. Shea's account if he had not agreed to be bound by the arbitration clause.
Mr. Shea has a substantial investment in the credit he has developed with Discover. If Mr. Shea's credit with Discover was terminated, he would have had to apply for new credit, which may not have been possible to obtain. The potential loss of credit which would have accompanied a rejection of the arbitration clause, effectively created a barrier to such rejection, making the issue of proper notice and consent that much more important. Mr. Shea completed no affirmative act to be bound by the *365 arbitration clause, he never "consented" to it, and it cannot be enforced against him. The arbitration clause cannot be applied in this case.
N.J.S.A. 2A:24-1 provides that arbitration clauses are not enforceable if there are "grounds ... at law or in equity for the revocation of a contract." Unconscionability is such a ground. In Chimes v. Oritani Motor Hotel, Inc., 195 N.J.Super. 435, 480 A.2d 218 (App.Div.1984), the court relied upon the reasoning of the California Supreme Court and held that an alternative dispute resolution provision in a contract was unconscionable and unenforceable. The court noted that "[o]ur Supreme Court has granted relief from provisions in contracts that are against public policy and are not freely negotiated because of unequal bargaining power of the parties." Id. at 442, 480 A.2d 218.
In the instant matter, the arbitration clause is contained in a contract of adhesion. There is clearly unequal bargaining power between the parties and the only purpose of the provision purporting to prevent class-wide litigation is to effectively remove the only legitimate remedy for cardholders with small claims.
N.J.S.A. 17:3B-41 does not support Discover's position. That statute provides in relevant part:
"A bank may, if the agreement governing a revolving credit plan so provides, at any time, or from time to time, amend the terms of the agreement, including without limitation, the terms governing the periodic percentage rate or rates used to calculate interest, the method of computing the outstanding unpaid indebtedness to which the rate or rates are applied, the amount of other charges and the applicable installment repayment schedule, in accordance with the further provisions of this section."
This statute does not apply under the circumstances presented. There is a clear distinction between amending the financial terms and rates of a credit card agreement and the unilateral addition of new provision not contemplated at the time of the original agreement. Such distinction is persuasively discussed and decided in Badie Supra.
N.J.S.A. 17:3B-41 applies only when the original cardmember agreement specifically provides that the particular type of amendment can be made; here it does not. The statute provides only that the agreement can be "amended", not materially altered with new terms that by New Jersey case law require notice and mutual assent. The statute does not specifically refer to arbitration clauses. The examples in the statute clearly indicate the only amendments permitted are to changes relating to charges on the account. Discover is not permitted to unilaterally amend it agreement to add an arbitration clause. Additionally, the statute should not be read to authorize the addition of a provision which would be unconscionable.

UNDER THE LAW OF ANY JURISDICTION, INCLUDING BOTH NEW JERSEY AND DELAWARE, THE CLAUSE IN THE ARBITRATION AGREEMENT PURPORTING TO PRECLUDE CLASSWIDE RELIEF IS UNCONSCIONABLE AND UNENFORCEABLE
The law relating to unconscionability is universal. Under both New Jersey and Delaware law, unconscionable contract provisions are unenforceable. See N.J.S.A. 2A:24-1 and Chimes v. Oritani Motor Hotel, Inc., Supra, where the Court stated at page 442, 480 A.2d 218:
"[o]ur Supreme Court has granted relief from provisions in contracts that are against public policy and are not freely *366 negotiated because of unequal bargaining power of the parties."
The arbitration clause at issue is contained in a contract of adhesion, the parties are of unequal bargaining power, and clearly, the only purpose of the provision purporting to prevent class-wide arbitration is to benefit Discover. Under New Jersey Law, the court finds the term precluding class wide arbitration unconscionable and as such unenforceable.
Delaware law also mandates the same result. In Delaware, unconscionable contract provisions, including unconscionable arbitration clauses, are unenforceable. The Uniform Arbitration Act, 10 Delaware Code §§ 5701, et. seq., acknowledges that an arbitration clause is enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract....". Unconscionability is such a ground for revocation of a contract. 6 Delaware Code § 2-302 provides in relevant part as follows:
"Unconscionable contract or clause.
(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."
In Graham v. State Farm Mutual Ins. Co., 565 A.2d 908 (Del.1989), the Delaware Supreme Court stated that an arbitration mechanism could be unconscionable if it was contained in a contract of adhesion and unfairly structured. See also Worldwide Ins. Group v. Klopp, 603 A.2d 788 (Del.1992).
The provision preventing class actions and the consolidation of claims is contained in a contract of adhesion under either body of law. The provision against class-wide relief in Discover's amendment benefits only Discover, at the expense of individual cardholders. While Discover can use the provision to preclude class actions and therefore, effectively immunize itself completely from small claims, individual cardholders gain nothing, and in fact, are effectively deprived of their small individual claims. Discover can completely avoid accountability whenever the harm to each class member is small enough. Such a provision preventing class actions and the consolidation of claims is unconscionable under Delaware and New Jersey law.
The persuasive reasoning of Bolter v. Superior Court, 87 Cal.App.4th 900, 104 Cal.Rptr.2d 888, modified 88 Cal.App.4th 238 (2001), dictates the provision at issue is both procedurally and substantively unconscionable. In Bolter, the arbitration agreement contained the following provision quoted at page 894, 87 Cal.App. 4th 900:
"[Franchisees] agree that all arbitration shall be conducted on an individual, not class-wide, basis and that an arbitration proceeding between [franchisor] and [franchisee] shall not be consolidated with any other arbitration proceeding involving [franchisor] and any other natural person..."
The court acknowledged the arbitration agreement's unconscionability with regard to the foreclosure of a class-wide proceeding. The court recognized that plaintiffs were individuals with little financial means, therefore, the court held the prohibition against consolidation had no justification other than as a means of maximizing an advantage over the plaintiffs.
In this matter, Discover's arbitration agreement includes the provision:,
"Neither you nor we shall be entitled to join or consolidate claims in arbitration *367 by or against other cardmembers with respect to their accounts, or arbitrate any claims as a representative or member of a class or in a private attorney general capacity."
If enforced, the provision against class actions and consolidations would allow Discover to create an economic advantage over each individual cardholder so great that none would reasonably be able to proceed. By depriving cardmembers of any forum in which they could reasonably vindicate their rights, Discover seeks to leave itself in a position where it could completely avoid accountability. This type of power cannot be the purpose of arbitration. In Powertel, Inc. v. Bexley, 743 So.2d 570. (Ct.App.1 Dist.1999) the court stated in a similar context at page 574-576:
"Although not dispositive of this point, it is significant that the arbitration clause is an adhesion contract ... Powertel prepared the arbitration clause unilaterally and sent it along to its customers as an insert to their monthly telephone bill. The customers did not bargain for the arbitration clause, nor did they have the power to reject it. One of the hallmarks of procedural unconscionability is the absence of any meaningful choice on the part of the consumer. See Belcher [v. Kier, 558 So.2d 1039 (Fla.App.2 Dist. 1990)]; Kohl [v. Bay Colony Club Condominium, Inc., 398 So.2d 865 (Fla. App.4 Dist.1981)]. Here, the customers had no choice but to agree to the new arbitration clause if they wished to continue to use the cellular telephone plans they had purchase from Powertel."
* * * *
"It is true, as Powertel argues, that customers can avoid the effect of the arbitration clause by canceling their phone service and signing an agreement with another provider. The fallacy of that argument, however, is that switching providers would result in a loss of the investment the customers have in the agreements they made with Powertel. They purchased equipment that works only with the Powertel service and they have obtained telephone numbers than cannot be transferred to a new provider. It is reasonable to assume that some customers may suffer a great deal of inconvenience and expense to obtain and publish a new telephone number. Hence, it is no answer to say that the customers can simply switch providers. Many customers may have continued their service with Powertel despite their objection to the arbitration clause simply because they had no economically feasible alternative."
* * * *
"The arbitration clause also effectively removes Powertel's exposure to any remedy that could be pursued on behalf of a class of consumers ... Class litigation provides the most economically feasible remedy for the kind of claim that has been asserted here. The potential claims are too small to litigate individually, but collectively they might amount to a large sum of money. The prospect of class litigation ordinarily has some deterrent effect on a manufacturer or service provider, but that is absent here. By requiring arbitration of all claims, Powertel has precluded the possibility that a group of its customers might join together to seek relief that would be impractical for any of them to obtain alone. Again, this is an advantage that inures only to Powertel. The arbitration clause precludes class litigation by either party, but it is difficult to envision a scenario in which that would work to Powertel's detriment."
See also Lozada v. Dale Baker Oldsmobile, Inc., 91 F.Supp.2d 1087 (W.D.Mich.2000) (refusing to enforce an arbitration clause *368 containing a "no class action" clause on the ground that the arbitration agreement was unconscionable).
Banks such as Discover have immense power over their credit card customers. Discover can effectively destroy the cardholder's credit standing and ability to obtain future credit by mailing negative credit comments about the cardholder to the major reporting agencies. The refusal of a cardmember to pay an improper fee, even if that refusal is justified, could result in making it virtually impossible for the cardholder to refinance a home or lease a car. This huge leverage gives a bank like Discover an all powerful mechanism to enforce its rights without ever having to venture into a court or meaningful arbitration proceeding. Without the potential of some classwide relief, the cardmember has no leverage at all. The threat of the card holder filing for individual arbitration of a $25 or $50 claim is meaningless compared to class wide multimillion dollar litigation to redress the alleged wrong to hundreds of thousands of cardholders.
The requirement for a cardmember to pursue a claim against Discover on an "individual" basis, in the current context, is an unconscionable restriction that should not be enforced.
Mr. Shea had no market alternatives. This is not a situation where a consumer can simply purchase an identical product from a different source. Mr. Shea would have had to cancel his Discover credit card and apply for new credit with another bank for which he may or may not have been approved. This is a process that takes time and there is no guarantee of receiving credit with equivalent limits and interest rates. The mere act of applying for new credit can itself damage consumers by impacting on a consumer's FICA score, which then impacts the availability of credit and the rates at which credit is offered, if it is offered at all.
Here, the California class action is brought on behalf of Discover credit cardholders who were allegedly improperly charged overlimit fees as a result of Discover's conduct. By definition, class members are consumers who are or have been at their credit limits. These are the types of consumers who cannot simply apply for and obtain another credit card from another bank, particularly at the same credit limit and the same interest rate they have built up over a period of time with Discover.
For the reasons stated above the plaintiff's demand to compel arbitration is denied and the complaint dismissed.