877 A.2d 340 (2005)
379 N.J. Super. 222
Jaliyah MUHAMMAD, on her own and on behalf of all others similarly situated, Plaintiff-Appellant,
v.
COUNTY BANK OF REHOBOTH BEACH, Delaware; Easy Cash; Telecash; and Main Street Corporation,[1] Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 2005.
Decided July 14, 2005.
*342 Donna Siegel Moffa, Philadelphia, PA, argued the cause for appellant (Williams, Cuker and Berezofsky and Trujillo Rodriguez & Richards, attorneys; Mark R. Cuker and Ms. Moffa, on the brief).
Marc J. Zucker, Philadelphia, argued the cause for the respondent County Bank (Weir & Partners attorneys; Susan Verbonitz and Mr. Zucker, on the brief).
Claudia T. Callaway (Paul, Hastings, Janofsky & Walker)of the District of Columbia Bar, admitted pro hac vice, argued the cause for respondent Main Street Service Corp. (Sweeney & Sheehan, and Ms. Callaway, attorneys; Ms. Callaway of counsel; J. Michael Kunsch, on the brief).
Pinilis Halpern, attorneys for amicus curiae AARP Foundation and Counsel for National Association of Consumer Advocates (William J. Pinilis, of counsel and on the brief).
Before Judges KESTIN, LEFELT and FALCONE.
The opinion of the court was delivered by
*343 FALCONE, J.A.D.
The principal question presented in this interlocutory appeal, and one that appears to be of first impression in this State, is whether a mandatory arbitration provision in a payday loan contract is enforceable. A "payday loan" is a short term, single payment, unsecured consumer loan, so-called because payment is typically due on the borrower's next payday.
Plaintiff, Jaliyah Muhammad, contends that, because the arbitration clause is both procedurally and substantively unconscionable, the trial court erred in its determination that the clause was enforceable. She further contends that the trial court should have permitted discovery prior to making its determination that the arbitration clause is enforceable. We disagree and affirm.

I.
Here are the pertinent facts and relevant procedural history. According to the certification of David E. Gillan, a Vice President of defendant, County Bank of Rehoboth Beach, Delaware (County Bank), County Bank is a federally insured depository institution, chartered under Delaware law, whose main office is located in Rehoboth Beach, Delaware. Since 1997, one of the products offered by County Bank is a payday loan. An applicant may be approved for a loan of up to $500. County Bank uses independent servicers, including defendant Main Street Service Corporation (Main Street) to market its consumer loans nationally.
County Bank has entered into standardized written contracts with its servicers. Under the terms of these contracts, the servicers market the loans, assist in processing loan applications, and service and collect the loans, which are made and funded exclusively by County Bank and not the servicers. In 2003, Market Street operated a telephone service center located in Pennsylvania from which it marketed, processed, serviced and collected County Bank's loans in accordance with policies and procedures established by County Bank.
According to plaintiff, she was enrolled in 2003 as a part-time student at Berkley College in Paramus. Although her tuition was financed by student loans, she had other educational expenses, such as books, which were not covered by the loans. In April 2003, based on a need for cash to purchase books for her "next college terms", plaintiff responded to a Main Street advertisement. A loan application was faxed to her. On page two of the application, just above plaintiff's signature, were clauses entitled, "AGREEMENT TO ARBITRATE ALL DISPUTES" and "AGREEMENT NOT TO BRING, JOIN OR PARTICIPATE IN CLASS ACTIONS." The application further advised plaintiff that County Bank had "retained Main Street ... to assist in processing [her] Application and to service [her] loan." Plaintiff completed and returned the loan application by facsimile, seeking a $100 loan.
Plaintiff also completed and returned by fax the one-page Loan Note and Disclosure form that included above her signature a number of clauses, including the following, which are the subject of the dispute presented to us:

AGREEMENT TO ARBITRATE ALL DISPUTES: You and we agree that any and all claims, disputes or controversies between you and us and/or the Company, any claim by either of us against the other or the Company (or the employees, officers, directors, agents or assigns of the other or the Company) and any claim arising from or relating to your application for this loan or any other *344 loan you previously, now or may later obtain from us, this Loan Note, this agreement to arbitrate all disputes, your agreement not to bring, join or participate in class actions, regarding collection of the loan, alleging fraud or misrepresentation, whether under the common law or pursuant to federal, state or local statute, regulation or ordinance, including disputes as to the matters subject to arbitration, or otherwise, shall be resolved by binding individual (and not joint) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed. This agreement to arbitrate all disputes shall apply no matter by whom or against whom the claim is filed. Rules and forms of the NAF may be obtained and all claims shall be filed at any NAF office, on the World Wide Web at www.arb-forum.com, by telephone at 800-474-2371, of at "National Arbitration Forum, P.O. Box 50191, Minneapolis, Minnesota 55405." Your arbitration fees may be waived by the NAF in the event you cannot afford to pay them. The cost of any participatory, documentary or telephone hearing, if one is held at your or our request, will be paid for solely by us as provided in the NAF Rules and, if a participatory hearing is requested, it will take place at a location near your residence. This arbitration agreement is made pursuant to a transaction involving interstate commerce. It shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16. Judgment upon the award may be entered by any party in any court having jurisdiction.
NOTICE: YOU AND WE WOULD HAVE A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND HAVE A JUDGE OR JURY DECIDE THE DISPUTES BUT HAVE AGREED INSTEAD TO RESOLVE DISPUTES THROUGH BINDING ARBITRATION.

AGREEMENT NOT TO BRING, JOIN OR PARTICIPATE IN CLASS ACTIONS: To the extent permitted by law, you agree that you will not bring, join or participate in any class action as to any claim, dispute or controversy you may have against us, our employees, officers, directors, servicers and assigns. You agree to the entry of injunctive relief to stop such a lawsuit or to remove you as a participant in the suit. You agree to pay the attorney's fees and court costs we incur in seeking such relief. This Agreement does not constitute a waiver of any of your rights and remedies to pursue a claim individually and not as a class action in binding arbitration as provided above.
After this language, and just above the signature line, the following language appears:
BY SIGNING BELOW, YOU AGREE TO ALL OF THE TERMS OF THIS NOTE, INCLUDING THE AGREEMENT TO ARBITRATE ALL DISPUTES AND THE AGREEMENT NOT TO BRING, JOIN OR PARTICIPATE IN CLASS ACTIONS. YOU ALSO ACKNOWLEDGE RECEIPT OF A FULLY COMPLETED COPY OF THIS NOTE.
The Loan Note and Disclosure form executed by plaintiff disclosed that the amount of the loan was $100, the finance charge was $30, the annual percentage rate (APR) was 644.1%, and payment of $130 from plaintiff was due on May 16, 2003.
On or about May 23, 2003, plaintiff applied for and received a payday loan of $200. The identical forms were executed by plaintiff. The Loan Note and Disclosure *345 form for this loan disclosed that the amount of the loan was $200, the finance charge was $60, the APR was 608.33%, and payment of $260 from plaintiff was due on June 13, 2003.[2]
On or about June 6, 2003, plaintiff applied for and received another payday loan of $200. Again, the paperwork was identical to the forms previously executed by plaintiff. The Loan Note and Disclosure form disclosed the amount of the loan, the finance charge of $60, the APR of 782.14%, and a repayment date of June 27, 2003.
As to all three loans, the exchange of paperwork between plaintiff and Main Street took place by facsimile and, once a loan application was approved, funds were transmitted from a County Bank account directly to plaintiff's checking account.

II.
On or about February 2, 2004, plaintiff filed a class action complaint alleging that: (1) all four defendants violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -20; (2) Main Street, Easy Cash and Telecash violated the civil usury law, N.J.S.A. 31:1-1 to -9, and engaged in a pattern of racketeering in violation of N.J.S.A. 2C:41-1 to -6.2, the New Jersey Racketeering and Corrupt Organizations Act (RICO statute); and (3) County Bank conspired with the other defendants to violate the RICO statute, N.J.S.A. 2C:5-2, and aided and abetted the other defendants in conduct that violated the civil and criminal usury laws of this State. Thereafter, on or about February 23, 2004, plaintiff made a demand upon defendants for the production of documents and propounded thirty-eight interrogatories.
On or about March 11, 2004, defendants removed the case to federal court on the ground that plaintiff's claims were preempted by federal law, 12 U.S.C.A. § 1831d, because they amounted to usury claims against a state-chartered bank. Five days later, defendants filed a motion to stay the action pending arbitration and to compel arbitration or, in the alternative, to dismiss the case. On or about April 1, 2004, while defendants' motion was pending, plaintiff filed a motion to remand the action to state court.
On or about May 18, 2004, U.S. Magistrate Judge Hedges issued a report wherein he recommended that plaintiff's remand motion should be granted. By written decision dated June 10, 2004, Federal District Court Judge Martini ordered remand of the matter to state court.
On or about July 7, 2004, defendants filed a notice of motion in state court to stay the action pending arbitration and to compel arbitration on the ground that "the parties entered into a written arbitration agreement which is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, and provides for arbitration of claims such as those asserted [in the complaint]." Defendants also filed a notice of motion for a protective order on the grounds that discovery as to plaintiff's claims was "unwarranted and inappropriate" because the claims "[were] referable to arbitration pursuant to the parties written arbitration agreement. . . ." Several weeks later, plaintiff filed a notice of cross-motion for an order striking defendants' objections to discovery and compelling responses to the interrogatories and production of documents requested in the discovery served on February 23, 2004.
*346 Prior to the return date of the motion and cross-motion, counsel for defendants wrote to plaintiff's counsel and expressed a willingness to participate in an American Arbitration Association (AAA) arbitration of plaintiff's individual claim, since plaintiff's brief in opposition to defendants' motion had suggested to defendants that plaintiff's rights "would be better protected in an arbitration conducted before the AAA as opposed to the NAF identified in the parties' arbitration agreement." In a response dated August 2, 2004, counsel for plaintiff emphatically declined this offer, characterizing it as "nothing more than a ploy to preserve advantages of an arbitration clause" and "an effort to prevent the court from scrutinizing a practice which [defendants] will repeat against other consumers who are not represented by counsel and who are not able to effectively challenge the cost issue."

III.
Defendants' motion for a stay of the action, to compel arbitration, and for a protective order, as well as plaintiff's cross-motion for an order striking defendants' objections to discovery, were argued before Judge Lyons on August 6, 2004. After reviewing New Jersey case law and declining to address the underlying dispute that plaintiff had with defendants as to the legality of payday loans, the motion judge identified the agreement between plaintiff and defendants as a contract of adhesion and noted that the issues presented were whether "the provisions in [the] contract are such that they are to be enforced on the procedural issue of arbitration..." and whether the arbitration plan as "substantively put forth is such as to be unconscionable." Judge Lyons decided these issues in favor of defendants.
Immediately after Judge Lyons rendered his oral decision, a colloquy ensued between the court and counsel as to the form of order. Counsel for plaintiff requested an opportunity to submit a form of order, which would dismiss the case without prejudice "so that [plaintiff] can take it up as a matter of right ... to the Appellate Division." Over the objection of defendants' counsel, Judge Lyons permitted both sides to submit a letter brief as to the form of order.
By letter brief dated August 9, 2004, counsel for plaintiff asked Judge Lyons "to dismiss [the] case without prejudice rather than to stay [the] case indefinitely pending the outcome of arbitration proceedings." A proposed form of order was submitted with the letter brief. Counsel for defendants forwarded a proposed form of order with a letter brief, dated August 11, 2004, in which plaintiff's request was opposed.
By order dated August 18, 2004, Judge Lyons stayed plaintiff's action pending arbitration pursuant to § 3 of the FAA, compelled arbitration of plaintiff's claims pursuant to § 4 of the FAA, and denied plaintiff's request "to modify [the] order to provide for the dismissal of [the] case." That same day, Judge Lyons signed a protective order under R. 4:10-3a, which provides, in pertinent part, "[u]pon motion... by the person from whom discovery is sought, and for good cause shown, the court may make [an] order which justice requires to protect a party or person from annoyance ... or undue burden or expense,... (a) [t]hat the discovery not be had."
Plaintiff filed a timely motion for leave to appeal from these two orders, which we granted on October 4, 2004. Thereafter, by order dated January 5, 2005, we granted the application of AARP, Consumers League of New Jersey and National Association of Consumer Advocates to appear as amici curiae. R. 1:13-9.

*347 IV.

On appeal, plaintiff contends that the trial court erred: (1) by ordering plaintiff to proceed to arbitration because the arbitration agreement is unenforceable under New Jersey law; and (2) by not permitting discovery prior to making the arbitration decision.[3] In support of her claim that the arbitration clause is unconscionable and, thus, unenforceable, plaintiff argues that the "arbitration provision at issue is a one-sided contract, unilaterally imposed upon financially distressed [and unsophisticated] consumers in a market devoid of choices." She argues further that the arbitration clause "requires that small claims be heard on an individual basis only, in a forum [NAF] lacking impartiality that operates under a cloak of confidentiality and so severely limits discovery that it denies consumers the ability [to] fully and fairly litigate their claims."
In support of plaintiff, amici contend that, since the usury laws of New Jersey protect consumers, the arbitration clause should be invalidated because it is a way to "hide ... exploitative business practices from public scrutiny and prevent vulnerable borrowers from obtaining redress and changing industry practices." In their joint brief, amici set forth the history and nature of payday loans and describe how lenders use exploitative practices that are costly to borrowers and exacerbate borrowers' problems with debt. They also discuss how lenders' relationships with out-of-state banks effectively evade state usury loans. While these claims are arguably compelling and raise important issues, they do not specifically address the issues before us, namely, the enforceability of the arbitration clause and the discovery question. We note, before addressing the issues presented, that if the practice of offering payday loans in this State is to be abolished, it will take legislative action to do so. See Bankwest, Inc. v. Baker, 324 F.Supp.2d 1333 (N.D.Ga.2004)(the Georgia law, O.C.G.A. §§ 16-17-1 to 16-17-10, that declared payday loans illegal in that state was upheld as constitutional).
We have considered and analyzed the written and oral arguments of the parties and the brief submitted by amici and, applying prevailing legal principles and procedural standards, including the principle that "this State has a strong public policy `favoring arbitration as a means of dispute resolution and requiring liberal construction of contracts in favor of arbitration'", Caruso v. Ravenswood Developers, Inc., 337 N.J.Super. 499, 504, 767 A.2d 979 (App.Div.2001)(quoting Alamo Rent A Car, Inc. v. Galarza, 306 N.J.Super. 384, 389, 703 A.2d 961 (App.Div.1997)), we reject plaintiff's claims and affirm.

V.
Congress enacted the FAA, 9 U.S.C.A. §§ 1-16, to "reverse longstanding judicial hostility" to arbitration agreements and to "place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26, 36 (1991). The New Jersey counterpart to the FAA is N.J.S.A. *348 2A:24-1 to -11. In pertinent part, § 2 of the FAA provides:
A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
[9 U.S.C.A. § 2.]
See N.J.S.A. 2A:24-1. In Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 854, 79 L.Ed.2d 1, 12 (1984), the Supreme Court stated that § 2 of the FAA was enacted to establish a national policy "favoring" arbitration.
The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.
[Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983).]
While the FAA applies in state as well as federal courts, Southland Corp., supra, 465 U.S. at 12, 104 S.Ct. at 859, 79 L.Ed.2d at 13, "[g]enerally, contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements without contravening § 2." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686-87, 116 S.Ct. 1652, 1653, 134 L.Ed.2d 902, 908-09 (1996). See also Gras v. Associates First Capital Corp., 346 N.J.Super. 42, 47, 786 A.2d 886 (App.Div.2001), certif. denied, 171 N.J. 445, 794 A.2d 184 (2002). Thus, "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985, 993 (1995).
In this state, we recognize unconscionability as a basis for invalidating a contract. See Saxon Constr. and Management Corp. v. Masterclean of North Carolina, 273 N.J.Super. 231, 236, 641 A.2d 1056 (App.Div.)("It is equally well recognized that our courts may refuse to enforce contracts that are unconscionable or violate public policy"), certif. denied, 137 N.J. 314, 645 A.2d 142 (1994). But, "[t]here is no hard and fast definition of unconscionability." Lucier v. Williams, 366 N.J.Super. 485, 492, 841 A.2d 907 (App.Div.2004). In Howard v. Diolosa, 241 N.J.Super. 222, 230, 574 A.2d 995 (App. Div.), certif. denied, 122 N.J. 414, 585 A.2d 409 (1990), we described unconscionability as "overreaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the contract that no reasonable person not acting under compulsion or out of necessity would accept its terms." When the issue of unconscionability is addressed, we look at two factors, namely, unfairness in the formation of the contract (procedural unconscionability) and excessively disproportionate terms (substantive unconscionability). Sitogum Holdings, Inc. v. Ropes, 352 N.J.Super. 555, 564, 800 A.2d 915 (Ch.Div. 2002). Procedural unconscionability "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." *349 Ibid. Substantive unconscionability "suggests the exchange of obligations so one-sided as to shock the court's conscience." Id. at 565, 800 A.2d 915. Applying a "sliding scale" of unconscionability, a claim of unconscionability can succeed when one form of it, e.g., procedural unconscionability, is greatly exceeded, while the other form of it, e.g., substantive unconscionability, is only marginally exceeded. Id. at 565-67, 800 A.2d 915.
The issue of unconscionability is one of law for resolution by the court, Gladden v. Cadillac Motor Car Div., General Motors Corp., 83 N.J. 320, 337, 416 A.2d 394 (1980), and the burden of proving unconscionability is on the party asserting it, Howard, supra, 241 N.J.Super. at 230, 574 A.2d 995.
Here, plaintiff contends that the agreement was a contract of adhesion and thus procedurally unconscionable. While it appears that the agreement between plaintiff and defendants is a contract of adhesion"it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the `adhering' party to negotiate except perhaps on a few particulars", Rudbart v. North Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353, 605 A.2d 681, cert. denied sub nom., First Fid. Bank v. Rudbart, 506 U.S. 871, 113 S.Ct. 203, 121 L.Ed.2d 145 (1992)"the mere fact that a contract is adhesive does not render it unenforceable." Gras, supra, 346 N.J.Super. at 48, 786 A.2d 886. In fact, a finding that a contract is one of adhesion is the "beginning, not the end, of the inquiry." Rudbart, supra, 127 N.J. at 354, 605 A.2d 681. In determining whether to enforce the terms of a contract of adhesion, the appropriate analysis requires a consideration of the subject matter of the contract, the relative bargaining powers of each party, the degree of economic compulsion motivating the adhering party, and the public interests affected by the contract. Id. at 356, 605 A.2d 681.

VI.
We now analyze plaintiff's claim of unenforceability in light of the four Rudbart factors. The parties appear to agree that the subject matter of the agreement is arbitration. Plaintiff contends that the arbitration forum will not issue a binding, public opinion, and consequently will hide defendants' "scheme" to evade the usury laws of this State. Besides being somewhat speculative, this contention must be balanced against this State's strong policy favoring arbitration.
Plaintiff argues on the second Rudbart factor that the relative bargaining position of the parties and "the very terms of the loan constitute evidence that payday borrowers have a high degree of economic compulsion and are desperate enough to accept almost any contract provision, no matter how unfavorable." In this regard, plaintiff characterizes herself as "untrained and unsophisticated" and claims she had "no real choice but to agree to arbitration" because all payday lenders include an arbitration clause. As to defendants, plaintiff contends that County Bank was a "repeat player" in the payday loan market with an understanding of how clauses imposing arbitration and banning class actions insulated it from liability.
To bolster her claim that disparities in knowledge can support a finding of unconscionability, plaintiff cites the Lucier case, 366 N.J.Super. at 485, 841 A.2d 907. In Lucier, the question presented to us was the enforceability of a limitation-of-liability provision in a home inspection contract, the effect of which was to limit the home buyer's potential recovery to one-half of the fee paid for the home inspection service. *350 The plaintiffs claimed damages of $10,000, but the limitation-of-liability provision in the form contract limited defendant's liability to $192.50. The contract also contained an enforceable arbitration clause. We held the provision was unconscionable and therefore unenforceable. Our determination was based on a number of factors: (1) the document was a contract of adhesion that defendant refused to alter despite plaintiffs' protests; (2) the parties were in a grossly disproportionate bargaining position; (3) the potential damage level was so nominal as to avoid almost all responsibility for the professional's negligence; and (4) the provision was "contrary to the state's public policy of effectuating the purpose of a home inspection contract to render reliable evaluation of a home's fitness for purchase and holding professionals to certain industry standards." Lucier, supra, 366 N.J.Super. at 493, 841 A.2d 907.
We are satisfied that plaintiff's reliance on Lucier is misplaced because the facts are distinguishable. While the disparity in bargaining position was a factor in our decision in Lucier, equally compelling was the finding that the provision was against public policy because it severely limited defendant's responsibility. Here, while there was certainly unequal bargaining power between the parties, disparity will not always render a contract unconscionable. See Gilmer, supra, 500 U.S. at 33, 111 S.Ct. at 1655, 114 L.Ed.2d at 41 ("Mere inequality in bargaining power ... is not sufficient reason to hold that arbitration agreements are never enforceable in the employment context"). See also Martindale v. Sandvik, Inc., 173 N.J. 76, 90, 800 A.2d 872 (2002)("Virtually every court that has considered the adhesive effect of arbitration provisions in employment applications or employment agreements has upheld the arbitration provision contained therein despite potentially unequal bargaining power between the employer and employee").
In addition, there is nothing in the record presented to us to establish that plaintiff ever sought to alter the terms of the agreement and was precluded from doing so, or that defendants' liability was limited. It seems clear that plaintiff had the opportunity and ability to read the plain language of the agreement and was fairly apprised that she was not giving up, as she claims, her ability to vindicate her rights. Rather, plaintiff was agreeing to have the opportunity to vindicate those rights in an arbitration and not a court. See Van Syoc v. Walter, 259 N.J.Super. 337, 339, 613 A.2d 490 (App.Div.1992)("when ... parties agree to arbitrate, they are opting for a nonjudicial manner of resolving their disputes", and "[i]t is not whether the contract can be attacked, but the forum in which the attack is to take place)", certif. denied, 133 N.J. 430, 627 A.2d 1136 (1993).
Regarding the third Rudbart factor, plaintiff contends that economic duress forced her to make the agreement in order "to cover immediate expenses for which she had no cash." "Economic duress occurs when the party alleging it is `the victim of a wrongful or unlawful act or threat', which `deprives the victim of his [or her] unfettered will.'" Quigley v. KPMG Peat Marwick, LLP, 330 N.J.Super. 252, 263, 749 A.2d 405 (App.Div.)(quoting 13 Williston on Contracts, § 1617 (Jaeger ed.1970)), certif. denied, 165 N.J. 527, 760 A.2d 781 (2000). In Continental Bank v. Barclay Riding Academy, Inc., 93 N.J. 153, 177, 459 A.2d 1163, cert. denied, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 684 (1983), we noted "that the `decisive factor' is the wrongfulness of the pressure exerted [,]" and that "[t]he term `wrongful' ... encompasses more than criminal or tortuous acts, for conduct *351 may be legal but still oppressive." Further, wrongful acts can include acts that are wrong in a moral or equitable sense. Ibid.
In Quigley, supra, 330 N.J.Super. at 252, 749 A.2d 405, plaintiff claimed that the trial court erred in enforcing an arbitration agreement that she had signed after having been advised by her supervisor that she would be terminated if she declined to sign. In reversing the trial court, we stated that "courts that have considered this issue [of whether the threat of termination of employment for refusing to agree to arbitration is oppressive] have consistently determined that the economic coercion of obtaining or keeping a job, without more, is insufficient to overcome an agreement to arbitrate statutory claims." Id. at 264, 749 A.2d 405. We made a finding that plaintiff had not demonstrated more than ordinary economic pressure faced by every employee who needed a job and concluded that there was no economic duress to render the arbitration agreement unconscionable. Id. at 266, 749 A.2d 405.
We are satisfied here that plaintiff's circumstances are less compelling than an employee who is forced to sign an arbitration agreement as a condition of continued employment. Plaintiff was not the victim of a wrongful or unlawful act or threat. She was simply a person who needed money to purchase school books and decided to meet this expense by making a number of payday loans. No employee of the defendants solicited plaintiff or exerted pressure on her to make any of the loans. Indeed, plaintiff approached the defendants. And, while plaintiff may have been experiencing financial stress, she was not, under these facts, the victim of sufficient economic duress to render the arbitration clause she signed unconscionable.
As to the final Rudbart factor, i.e., whether a contract of adhesion is unconscionable because the public interest is affected by the agreement, plaintiff contends that: (A) the procedural limitations on the chosen forum, NAF, especially NAF rules 37 and 29, preclude her from a full and fair opportunity to litigate her claim; (B) that NAF is biased; and (C) the arbitration clause is exculpatory in that it denies the borrower the right to participate in a class action suit.

A.
In regard to NAF procedures, plaintiff argues that they are defective because they are confidential and do not permit stare decisis or collateral estoppel. She specifically objects to NAF Rule 37G (Awards), which provides that an award shall not include any reasons, findings of fact or conclusions of law unless requested and an additional fee of $100 is paid, and NAF Rule 29 (Discovery), which limits discovery to "an amount commensurate with the claimeven if the claim involves complex legal and factual issues." These claims are without merit. Because plaintiff is unable to establish precedents through her arbitration, this claimed "defect" does not render the forum violative of public policy, especially considering our strong policy favoring arbitration.
As to NAF Rule 37G, plaintiff has not explained why its terms preclude her from a full and fair opportunity for her claims to be heard. Plaintiff's conclusionary statement and lack of supporting legal argument as to this rule make it impossible for us to consider this issue. See Miller v. Reis, 189 N.J.Super. 437, 441, 460 A.2d 210 (App.Div.1983)(appellants' request for a declaration of third-party defendant's liability on a minor issue was not considered on appeal because the issue was raised in a conclusionary statement by the brief writer, but was not briefed). See also State v. *352 Hild, 148 N.J.Super. 294, 296, 372 A.2d 642 (App.Div.1977).
As noted, plaintiff argues that NAF Rule 29 precludes her from effectively litigating her small value claim. She maintains that defendants acted in concert through a complex legal arrangement to evade New Jersey's usury laws by means of a "rent-a-charter" scheme, whereby County Bank lent its Delaware charter to Main Street to enable Main Street to do business in this State without being subject to our usury laws. In order to prove the scheme, plaintiff contends she will need extensive discovery. This issue is likewise without merit.
NAF Rule 29A provides, in pertinent part, "[p]arties shall cooperate in the exchange of documents and information[,]" and any party "requesting discovery shall contact other [p]arties and discuss discovery [r]equests and any objections and arrange for the exchange of documents and information." In pertinent part, NAF Rule 29B provides:
If the parties are unable to resolve discovery matters under Rule 29A, a Party may request the disclosure of documents, sworn answers to not more than twenty-five (25) written questions, or one or more depositions before a Hearing where:
1. The information sought is relevant to a Claim or Response, reliable, and informative to the Arbitrator;
2. The cost is commensurate with the amount of the Claim; and
3. The Request is reasonable and not unduly burdensome and expensive.
Pursuant to NAF Rule 29C, a party may request other discovery, including requests for admissions and requests for physical or mental examinations under the same three conditions listed under Rule 29B. And, under NAF Rule 29G, the arbitrator "may draw an unfavorable, adverse inference or presumption from the failure of a party to provide discovery" and may assess "costs, expenses, and fees, including reasonable attorney fees related to seeking or resisting discovery under [the rule] ... against the non-prevailing party."
The plain language of NAF Rule 29 makes it clear that the cost of discovery cannot exceed the amount of the claim, but this limitation is imposed only if the parties cannot mutually agree on the discovery to be exchanged. Despite this apparent limitation on discovery, we are satisfied that Rule 29 does not place any more restrictive limits on the parties than do our Rules of Court regarding actions filed in Small Claims Court and, indeed, may permit more discovery than permitted by the court rules. Under NAF Rule 29, discovery is limited to the amount in controversy only if the parties are unable to resolve discovery issues between themselves. In these circumstances, the arbitrator may order answers to twenty-five interrogatories, "one or more depositions", and impose costs and sanctions if the non-producing party acted in bad faith. Under R. 6:4-3(e), "each party may serve interrogatories consisting of no more than five questions without parts." There are, however, no provisions for depositions or counsel fees. In these circumstances, since the limited discovery provided by NAF Rule 29 does not place plaintiff in any worse position than she would be in if she were able to pursue her claim in state court, her claim that the arbitration provision is unconscionable must fail.

B.
Plaintiff claims that the arbitration clause is unconscionable because the chosen forum, NAF, is biased against consumers who bring suit against lenders. In response to this claim, defendants point to *353 a number of reported decisions where the issue of NAF's bias was raised and rejected. See Marsh v. First USA Bank, N.A., 103 F.Supp.2d 909 (N.D.Tex.2000); Bank One, N.A. v. Coates, 125 F.Supp.2d 819 (S.D.Miss.2001), aff'd, 2002 WL 663804 (5th Cir.2002); Hutcherson v. Sears, Roebuck & Co., 342 Ill.App.3d 109, 276 Ill. Dec. 127, 793 N.E.2d 886, appeal denied, 205 Ill.2d 582, 281 Ill.Dec. 78, 803 N.E.2d 482 (2003).
In Marsh, the plaintiffs alleged that the NAF could not provide fair, impartial and effective relief because the NAF was prejudiced against consumers and engaged in a collusive effort with lenders to defeat consumer claims. The plaintiffs pointed to statistics which indicated that the bank had prevailed against holders of its credit cards in the overwhelming majority of disputes resolved through NAF. In further support of their claim of bias, plaintiffs pointed to NAF's reluctance to disclose information to its arbitrators, NAF's exorbitant or indeterminate fees, and NAF's ability to change its code of procedure at the whim of its director.
In finding the plaintiffs' allegations unfounded, the court in Marsh was "satisfied that NAF will provide a reasonable, fair, and impartial forum" for the plaintiffs to seek redress of their grievances. The court noted that NAF's Code of Procedure and Code of Conduct had provisions addressing conflicts of interest, disqualification of potential arbitrators, and peremptory challenges. Further, the court noted that an arbitration was subject to review by the court under 9 U.S.C.A. § 10.
Here, we are satisfied that plaintiff's interests are protected, since, under 9 U.S.C.A. § 10(a)(2) and N.J.S.A. 2A:24-8, even though an arbitrator may not be removed before the award, a court may vacate an arbitration award if there is evidence of impartiality or corruption.

C.
Plaintiff contends that the arbitration clause is unconscionable and contrary to public policy because it denies the borrower the right to participate in a class action suit, "effectively leaving payday borrowers without a realistic remedy." While plaintiff "does not contend that all contractual arbitration provisions that preclude aggregation of claims are unconscionable", she does allege "that in these circumstances, the preclusion [of class action suits] supports a finding of unconscionability based on the totality of the circumstances."
In support of her contention, plaintiff cites to numerous out-of-state cases, including several cases submitted since oral argument under R. 2:6-11, to support her claim that preclusion of class action suits can invalidate an arbitration case. Since we discern no basis to depart from Gras, supra, 346 N.J.Super. at 45, 786 A.2d 886, which directly addresses the issue, we see no need to discuss these cases, except for two New Jersey cases, Rockel v. Cherry Hill Dodge, 368 N.J.Super. 577, 847 A.2d 621 (App.Div.), certif. denied, 181 N.J. 545, 859 A.2d 689 (2004) and Discover Bank v. Shea, 362 N.J.Super. 200, 827 A.2d 358 (Law Div.2001), cited by plaintiff to support her claim that Judge Lyons overstated the holding of Gras.
In Gras, the plaintiffs filed suit against finance companies claiming that the credit life insurance provisions in their loan agreements violated the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20. The defendants filed a demand for arbitration pursuant to the arbitration agreement contained in the loan documents signed by plaintiffs. The plaintiffs moved to stay the arbitration and the defendants cross-moved for a stay pending *354 arbitration. The motion judge granted the defendants' motion and dismissed the plaintiffs' complaint. The plaintiffs appealed, claiming that the arbitration agreement was void because it contravened public policy by precluding class actions.
On appeal, after reviewing a number of federal cases that held the preclusion of class actions did not preclude arbitration and a number of cases cited by the plaintiffs for the contrary position and, finding the plaintiffs' authority "not persuasive", we rejected their claim. We noted, in affirming the motion judge, that "two significant public policies must be harmonized", namely, the CFA's policy to "root out consumer fraud" and the "competing and compelling public policy favoring arbitration as a means of dispute resolution and requiring liberal construction of contracts in favor of arbitration." Id. at 53-54, 786 A.2d 886. In resolving the conflict, we stated:
On balance, even if we consider the policies in equipoise, we must consider that here the parties have agreed to permit the issues to be resolved in the arbitration forum. We recognize that the parties were in distinctly different bargaining positions. We are less certain of the economic compulsion that caused plaintiffs to recast each loan with a new loan over a short period of time. Nevertheless, even assuming that these factors ultimately favor plaintiffs' position, the absence of a legislative mandate or overriding public policy in favor of class actions leads us to conclude that the arbitration provision here is enforceable.
[Id. at 54, 786 A.2d 886.]
We are satisfied that plaintiff's reliance on Rockel, supra, 368 N.J.Super. at 577, 847 A.2d 621, is misplaced. There, we noted that the "arbitration agreement [was] highly ambiguous because the parties executed two documents which contain separate and somewhat disparate arbitration clauses", and concluded "that the uncertain content of the parties' agreement to arbitrate, the contracts' conflicting descriptions of the manner and procedure which would govern the arbitration proceedings, the absence of a definitive waiver of plaintiffs' statutory claims, and the obscure appearance and location of the arbitration provisions, militate against the entry of an order requiring arbitration over plaintiffs' objection." Id. at 580-81, 847 A.2d 621. In reversing the trial court's dismissal of the plaintiffs' complaint, we noted the distinctions between the provisions in question and those considered in Gras and held that the ambiguity in the arbitration agreement was "fatal to the compelling of the arbitration of plaintiffs' CFA claims." Id. at 581, 847 A.2d 621. Finally, we note the following, which clearly distinguishes Rockel from Gras and supports defendants' position in this case:
The delicate balance between the policies of the CFA and the policy in favor of arbitration requires that the consumer be given reasonable notice of such provisions, that the provisions contain a clear waiver of statutory rights, and that the arbitration agreement be phrased in unambiguous terms. As explained, the arbitration agreement in question fails to meet these critical requirements. While we continue to adhere to Gras's holdings that arbitration may be compelled in a consumer transaction even when imposed by a party possessing superior bargaining power, and that a party claiming a contract to be the product of unconscionable conduct prohibited by the CFA may be compelled to arbitrate because of the presence of an arbitration clause contained in the very contract under attack, we conclude that any attempt to impose arbitration *355 through an arbitration agreement less clear and less noticeable than that considered in Gras is not likely to pass muster. Here, the presence of two conflicting arbitration provisions, the expression of a waiver of the right to trial by jury in small print, and the absence of any other clear warning or caution of the waiver of statutory rights, requires a rejection of these claims.
[Id. at 587, 847 A.2d 621.]
Here, the factors noted in Rockel, which militate against mandatory arbitration, are not present. The loan application and the loan note and disclosure form faxed to plaintiff contain clear, consistent, and unambiguous language relating to the parties' agreement to arbitrate all disputes and plaintiff's agreement not to bring, join or participate in class actions. Both forms set forth in capital letters, above plaintiff's signature, a notice that the parties agreed to resolve all disputes through binding arbitration. And, the loan note and disclosure set forth in capital letters an acknowledgment by plaintiff that by signing the form she was agreeing to arbitrate all disputes and agreeing not to bring, join or participate in class actions.
We are also satisfied that plaintiff's reliance on Discover Bank, supra, 362 N.J.Super. at 200, 827 A.2d 358, is equally unavailing. There, the plaintiff brought an action in New Jersey to compel arbitration against a defendant who had filed a class action against the plaintiff in California on behalf of the bank's credit card customers who had allegedly been charged improper overlimit fees. The plaintiff's demand to compel arbitration was denied and its complaint was dismissed. It appears that the original agreement between the credit cardholder and the bank did not contain an arbitration clause, but the bank amended its credit card agreement by way of a "bill stuffer" notice to provide for arbitration and to force its cardholders to give up their right to file a class action. Any cardholder who did not accept the new terms would have their account closed by the bank. In these circumstances, including a finding that the bank was able to "completely avoid accountability whenever the harm to each class member is small enough", the trial court concluded that the arbitration agreement was unenforceable and the agreement precluding class actions was unconscionable and unenforceable.
Discover Bank is clearly distinguishable from the case presented to us. First, unlike Discover Bank where the consumer received "notice" via a "bill stuffer", plaintiff in this case was clearly notified that she waived her right to file a class action. Second, we note that Discover Bank, which is a Law Division opinion, was decided two months prior to our decision in Gras and, to the extent it is in conflict with our holding in Gras, it is the latter that controls.
Before addressing plaintiff's final argument that discovery was necessary, we note that plaintiff's contention that the agreement is unenforceable because her RICO claim cannot be vindicated in arbitration is clearly without merit. RICO claims are subject to arbitration. Caruso, supra, 337 N.J.Super. at 505, 767 A.2d 979; Gras, supra, 346 N.J.Super. at 52, 786 A.2d 886. See also Republic of the Philippines v. Westinghouse Elec. Corp., 714 F.Supp. 1362, 1373 (D.N.J.1989).

VII.
Plaintiff contends that Judge Lyons erred in ruling that the matter should proceed to arbitration without first permitting discovery. In support of her claim that discovery should have been permitted prior to the determination as to the validity of the arbitration clause, plaintiff *356 cites Blair v. Scott Specialty Gases, 283 F.3d 595 (3d Cir.2002) and Hayes v. County Bank, 185 Misc.2d 414, 713 N.Y.S.2d 267 (2000). While the court permitted some limited discovery in each of these cases, we decline to adopt that approach as a requirement in this case. "Arbitration can attain its goal of providing final, speedy and inexpensive settlement of disputes only if judicial interference is minimized." Barcon Associates v. Tri-County Asphalt Corp., 86 N.J. 179, 187, 430 A.2d 214 (1981). Here, plaintiff has not convinced us that discovery was needed before Judge Lyons made his decision that the matter should proceed to arbitration.

VIII.
In summary, we are satisfied that plaintiff has failed to meet her burden that the contract was unconscionable and therefore unenforceable. We are equally satisfied that plaintiff can vindicate her claims in arbitration. Accordingly, the orders of August 18, 2004 are affirmed.
KESTIN, P.J.A.D., concurring.
While concurring with the result, I respectfully depart from the majority's approach in this case. Because of plaintiff's rejection of defendants' offer to arbitrate the matter under the aegis of the American Arbitration Association and pursuant to its established rules and procedures, I would not consider any of plaintiff's arguments addressed to the validity of NAF's arbitration procedures. Having forgone the opportunity to avoid the asserted bias and procedural unconscionability inflicted by NAF arbitration standards, plaintiff should not now be heard to attack those very processes, which she, for a second time, elected to be bound by.
On a more basic level, I share the majority's views in resolving the conflict between two public policies: on the one hand, the rules permitting class actions and the standards governing them; and, on the other hand, our system's commitment to arbitration as an alternative remedial choice to litigation. I see no enforceable bar to plaintiff's right to raise, in arbitration, the important public policies she advances stemming from this State's usury laws or any other pertinent question of law she may choose to argue.
NOTES
[1] Respondent County Bank certified that "Easy Cash" and "Telecash" were trade names that were used by County Bank in connection with the advertising and making of its short term loans. Main Street used the trade name "Easy Cash" but did not use the name "Telecash". They were not independent entities.
[2] In her brief, plaintiff states that she "extended" this loan twice, each time paying an interest charge of $60 (for a total finance charge of $180 on a $200 loan). In the record presented, there is no documentation to support this claim. The record does support, however, that plaintiff made three payday loans.
[3] In a footnote in their appellate brief, defendants contend that because the agreement between the parties contained a choice of law provision, i.e., "[t]his note is governed by Delaware law", that the law of that state should apply. We note that this choice-of-law question was not briefed in the trial court or discussed by the trial judge in his ruling. It is "wholly improper" to raise the issue now in a footnote. See Almog v. Israel Travel Advisory Serv., Inc., 298 N.J.Super. 145, 155, 689 A.2d 158 (App.Div.), certif. granted, 151 N.J. 463, 700 A.2d 876 (1997), appeal dismissed, 152 N.J. 361, 704 A.2d 1297, cert. denied, 525 U.S. 817, 119 S.Ct. 55, 142 L.Ed.2d 42 (1998).