**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2272-16T1

KUASHEMA RILEY,

    Plaintiff-Appellant,

v.

RAYMOUR & FLANIGAN and
MOSHIN CHUNAWALA,

    Defendants-Respondents.

_____

Argued September 26, 2017 – Decided October 20, 2017

Before Judges Carroll and Mawla.

On appeal from Superior Court of New Jersey,
Law Division, Hudson County, Docket No. L-
4100-16.

Mark Mulick argued the cause for appellant.

Ivan R. Novich and Tyler A. Sims argued the
cause for respondents (Littler Mendelson, PC,
attorneys; Mr. Novich and Mr. Sims, on the
brief).

PER CURIAM

    Plaintiff Kuashema Riley appeals from a January 20, 2017

order granting a motion by Raymour & Flanigan (R&F) and Moshin

Chunawala (collectively defendants) compelling arbitration of plaintiff's employment discrimination claims and dismissing her Law Division complaint without prejudice. We affirm.

The following facts are taken from the record. Plaintiff was employed by R&F in December 2012, as a furniture salesperson. She alleged several incidents of hostile work environment in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. Specifically, she asserted that her store manager frequently played music that included the words "nigger," "bitch," "ho," and "slut." She claimed that Chunawala and other employees frequently used the word "nigger" and "faggot" in her presence. Plaintiff alleged Chunawala threatened to bring a firearm into the workplace after the storeroom windows of the store had been shot out. She claimed Chunawala emailed a photograph of his penis to a fellow co-worker, and that the incident became common knowledge throughout the workplace.

Plaintiff asserts she complained about the hostile work environment to her supervisors, but the discriminatory conduct continued, and she was terminated in retaliation. Plaintiff filed a complaint in the Law Division alleging her termination was in violation of LAD. She also alleged defendants were responsible for the hostile work environment and the discrimination plaintiff experienced while an employee at R&F.

Defendants filed a motion to compel arbitration and stay the litigation in the Law Division pursuant to the Federal Arbitration Act, 9 U.S.C. § 1. Defendants argued plaintiff entered into an agreement to arbitrate all claims against R&F when she signed a document known as the "Associate's Agreement & Consent," during her employment. This form expressly stated employees who signed it consented to dispute resolution of all claims under the Employee Arbitration Program (EAP).

Plaintiff opposed defendants' motion and argued the EAP was unenforceable, unconscionable, and violated public policy. Specifically, plaintiff claimed she was forced to sign the EAP under duress and she did not fully understand the EAP.

The trial court enforced the agreement to arbitrate, noting the strong public policy favoring arbitration, and the fact plaintiff had thirty days to review the EAP before signing it. The trial court granted defendants' motion, ordered arbitration, and dismissed plaintiff's complaint without prejudice.

On appeal, plaintiff claims the EAP violates public policy because it requires her to pay the filing fees for arbitration, which she cannot afford. Plaintiff claims the fee provision of the EAP renders the whole agreement to arbitrate unenforceable. She asserts the EAP is unenforceable and violates public policy because she entered into it under duress, and because its terms

are complex and incomprehensible. Plaintiff also challenges the trial court's order because it required R&F to pay for the arbitration fees beyond the initial filing fee, and therefore would bias the arbitration process in favor of the party funding it. Plaintiff also urges reversal because the trial court order was entered without oral argument.

There is a strong preference to enforce arbitration agreements because "arbitration is [the] favored method of resolving disputes." See Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 131 (2001); see also Hojnowski v. Vans Skate Park, 187 N.J. 323, 341-42 (2006). The standard of review of the validity of an arbitration agreement and the legal determinations made by the trial court is de novo. Morgan v. Sanford Brown Inst., 225 N.J. 289, 302-03 (2016); see also Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Having considered plaintiff's claims and the record, we find no error in the trial court's decision to compel arbitration and we affirm.

I.

Plaintiff claims the EAP violates public policy since it requires her to pay the fees to initiate the arbitration process. Plaintiff states she has limited resources and cannot finance an arbitration. She argues the trial court erred in concluding the

EAP was enforceable without taking these claims into account. Instead, she asserts the EAP is unconscionable.

Arbitration agreements are afforded the same contract defenses of fraud, duress and unconscionability. Delta Funding Corp. v. Harris, 189 N.J. 28, 39 (2006). The Court has held an arbitration agreement may be unconscionable where it results in a litigant funding the arbitration costs because it would deter a litigant from vindicating his or her rights. Id. at 44.

We disagree the EAP is unconscionable because it requires plaintiff, as the complainant, to pay the initial filing fee. The EAP states the costs and fees are paid "in accordance with the rules of the Administrator for resolving disputes under employer-promulgated programs." The EAP defines "Administrator" as the American Arbitration Association (AAA) or Judicial Arbitration and Mediation Services, Inc. (JAMS). Pursuant to AAA's Employment Arbitration Rules and Mediation Procedures (AAA Rules), plaintiff would pay a $200 filing fee. Under the JAMS Employment Arbitration Rules and Procedures (JAMS Rules), plaintiff would be responsible for a $1,200 filing fee. These fees do not render the EAP unconscionable as plaintiff would have to bear the filing fees and other costs of a litigation in the Law Division were there no arbitration agreement.

A-2272-16T1

We also note nothing bars the arbitrator from re-allocating fees to the prevailing party, especially considering plaintiff's claims are grounded in the LAD, which is a fee shifting statute. N.J.S.A. 10:5-27.1; see also Rendine v. Pantzer, 141 N.J. 292, 332-33 (1995). Therefore, the EAP is not unconscionable because of its fee provisions. Also, because we conclude the fee provisions of the EAP are valid, we reject plaintiff's claim the EAP as a whole should be deemed unenforceable.

II.

Plaintiff also challenges the validity of the EAP claiming she signed it under duress and without a proper understanding of its terms. We find no support in the record for these claims.

> Economic duress occurs when the party alleging it is "the victim of a wrongful or unlawful act or threat," which "deprives the victim of his unfettered will." "[T]he 'decisive factor' is the wrongfulness of the pressure exerted. The term 'wrongful' in this context encompasses more than criminal or tortious acts, for conduct may be legal but still oppressive." The acts or threats constituting the duress "'are wrongful, not necessarily in a legal, but in a moral or equitable sense.'" In addition, duress entails inadequate consideration.
>
> [Quigley v. KPMG Peat Marwick, LLP, 330 N.J. Super. 252, 263 (App. Div. 2000) (citations omitted).]

R&F provided the EAP to all employees in February 2014. Plaintiff refused to immediately sign the document, and claims she

was pressured to do so. Notwithstanding, she certified that she took the EAP home, "read it carefully," and signed it "about one month later." Plaintiff alleges if she did not sign the EAP she feared she would lose her job, which constitutes evidence of duress.

The Supreme Court has held that employment is sufficient consideration for an employer to require employees to execute employment related contracts such as arbitration agreements. See Martindale v. Sandvik, Inc., 173 N.J. 76, 90 (2002) (holding "the [United States] Supreme Court obviously contemplated avoidance of the arbitration clause only upon circumstances more egregious than the ordinary economic pressure faced by every employee who needs the job" (quoting Young v. Prudential Ins. Co. of Am., Inc., 297 N.J. Super. 605, 688 (App. Div. 1997))). "[C]ourts that have considered this issue [of whether the threat of termination of employment for refusing to agree to arbitration is oppressive] have consistently determined that the economic coercion of obtaining or keeping a job, without more, is insufficient to overcome an agreement to arbitrate statutory claims." Muhammad v. Cty. Bank of Rehoboth Beach, 379 N.J. Super. 222, 240 (App. Div. 2005) (quoting Quigley v. KPMG Peat Marwick, LLP, 330 N.J. Super. 252, 263 (App. Div. 2000)).

The record lacks objective evidence of duress exerted by R&F. Furthermore, R&F requiring plaintiff to execute the EAP as a condition of ongoing employment is not duress. For these reasons, we reject plaintiff's claim of duress.

### III.

Plaintiff asserts the EAP is unenforceable and violates public policy because it is written in an incomprehensible manner. The record does not support such a claim.

In Garfinkel, supra, 168 N.J. at 131-32, the Supreme Court stated:

> Because of the favored status afforded to arbitration, "[a]n agreement to arbitrate should be read liberally in favor of arbitration." That favored status, however, is not without limits. The Court has stressed that "[i]n the absence of a consensual understanding, neither party is entitled to force the other to arbitrate their dispute. Subsumed in this principle is the proposition that only those issues may be arbitrated which the parties have agreed shall be." In respect of specific contractual language, "[a] clause depriving a citizen of access to the courts should clearly state its purpose. The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." As we have stressed in other contexts, a party's waiver of statutory rights "must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively." In the same vein, a "court may not rewrite a contract to broaden the scope of arbitration[.]"

[citations omitted.]

"A party who enters into a contract in writing, without any fraud or imposition being practiced upon him, is conclusively presumed to understand and assent to its terms and legal effect." Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992) (quoting Fivey v. Pennsylvania R.R. Co., 67 N.J.L. 627, 632 (E. & A. 1902)). An employee who signs but claims to not understand an arbitration agreement will not be relieved from an arbitration agreement on those grounds alone. See Booker v. Robert Half Int'l, Inc., 315 F. Supp. 2d 94, 101 (D.D.C. 2004); see also Friedman v. Tappan Dev. Corp., 22 N.J. 523, 531 (1956).

Plaintiff's assertion the EAP was difficult to understand, rendering it unenforceable, lacks merit. The EAP states, in pertinent part, "[u]nder this Program, you and we waive all rights to have a Claim decided by a court, judge, jury and, where permitted by law, an administrative agency." The EAP then explains what arbitration is and how it is different from a court proceeding. The document sets forth detailed instructions regarding the arbitration process. Therefore, plaintiff's argument the EAP is ambiguous, confusing, and drafted incomprehensibly is not supported by the record.

IV.

Finally, plaintiff's claims that the arbitrator will be biased because defendant was ordered to fund the arbitration proceeding, and her claim the trial court order should be reversed because there was no oral argument, lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION